1

2

CATHERINE CORTEZ MASTO
Attorney General

3

CAROLYN E. TANNER (Bar No. 5520)
NHU Q. NGUYEN (Bar No. 7844)

4

Senior Deputy Attorneys General
5420 Kietzke Lane, Suite 202

5

Reno, NV  89511
Telephone: (775) 688-1818

6

Facsimile: (775) 688-1822

7

*Attorneys for State of Nevada*

8

Additional counsel listed on next page

9

IN THE UNITED STATES DISTRICT COURT

10

DISTRICT OF NEVADA

11

12

13

14

15

16

17

18

19

20

21

22

| UNITED STATES OF AMERICA, STATE OF NEVADA THROUGH ITS DEPARTMENT OF NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL PROTECTION, A and THE SHOSHONE-PAIUTE TRIBES OF THE DUCK VALLEY RESERVATION, | ) ) ) ) ) ) |  |
|---|---|---|
| Plaintiffs, | ) ) ) | Civ. Action No. 3:12-cv-00524-RCJ-WGC |
| v. | ) ) | **UNOPPOSED REQUEST FOR ENTRY OF CONSENT DECREE** |
| ATLANTIC RICHFIELD COMPANY, THE CLEVELAND-CLIFFS IRON COMPANY, E.I. DU PONT DE NEMOURS AND COMPANY, TECK AMERICAN INCORPORATED, and MOUNTAIN CITY REMEDIATION, LLC, | ) ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

23

24

25

26

27

28

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

ELISE S. FELDMAN
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
Telephone:     (415) 744-6470
Facsimile:      (415) 744-6476
E-mail:  Elise.Feldman@usdoj.gov

DANIEL G. BOGDEN
United States Attorney
District of Nevada
HOLLY VANCE
Assistant United States Attorney
100 West Liberty
Suite 600
Reno, NV 89501
Telephone: (775) 784-5438
Facsimile: (775)784-5181
E-mail:  Holly.Vance@usdoj.gov
  *Attorneys for Plaintiff United States of America*

LLOYD B. MILLER (AK Bar No.7906040)
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
900 West Fifth Avenue
Suite 700
Anchorage, AK 99501-2029
Telephone: (907) 258-6377
Facsimile: (907) 272-8332
Email: Lloyd@sonosky.net
  *Attorney for the Shoshone-Paiute Tribes of the Duck Valley Reservation*

Now come the State of Nevada on behalf of the Nevada Department of Conservation and

Natural Resources, Division of Environmental Protection and the Department of Wildlife; the

United States of America, on behalf of the United States Environmental Protection Agency, the

Department of the Interior's Bureau of Indian Affairs and the United States Fish and Wildlife

Service, the Department of Agriculture's United States Forest Service; and the Shoshone-Paiute

Unopposed Request for Entry of Consent Decree

Tribes of the Duck Valley Reservation (collectively, "Plaintiffs"), and ask that this honorable

court enter the Consent Decree entered into by the Plaintiffs and Defendants Atlantic Richfield

Company, Cliffs Natural Resources f/k/a Cleveland-Cliffs Iron Company, E.I. du Pont de

Nemours and Company, Teck American Incorporated f/k/a Teck Cominco American Inc., f/k/a

Cominco American Inc., and Mountain City Remediation LLC, and lodged with this honorable

court on September 27, 2012. See Attachment 1 to Notice of Lodging, (Document No. 2). In

support of this Request, the Plaintiffs submit the Memorandum in Support of Unopposed Request

to Enter Consent Decree and its attachments, filed herewith.

Respectfully submitted,

FOR THE STATE OF NEVADA

CATHERINE CORTEZ MASTO
Attorney General

Date: 12/12/12                    _____/s/____Carolyn E. Tanner_____
                                  CAROLYN E. TANNER (Bar No. 5520)
                                  Senior Deputy Attorney General

Date: 12/12/12                    _____/s/____Nhu Q. Nguyen_____
                                  NHU Q. NGUYEN (Bar No. 7844)
                                  Senior Deputy Attorney General
                                  5420 Kietzke Lane, Suite 202
                                  Reno, Nevada 89511
                                  Telephone: (775) 688-1818
                                  Facsimile: (775) 688-1822

FOR THE UNITED STATES OF AMERICA

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: 12/12/12                    /s/    Elise S.  Feldman
                                 ELISE S. FELDMAN
                                 Trial Attorney
                                 Environmental Enforcement Section
                                 Environment & Natural Resources Division
                                 U.S. Department of Justice
                                 301 Howard Street, Suite 1050
                                 San Francisco, California  94105
                                 Telephone:  (415) 744-6470
                                 Facsimile:  (415) 744-6476

                                 DANIEL G. BOGDEN
                                 United States Attorney
                                 District of Nevada
                                 HOLLY VANCE
                                 Assistant United States Attorney
                                 100 West Liberty, Suite 600
                                 Reno, Nevada  89501
                                 Telephone: (775) 784-5438
                                 Facsimile: (775)784-5181
                                 E-mail: Holly.Vance@usdoj.gov

Of counsel:
JOSHUA WIRTSCHAFTER
Assistant Regional Counsel
United States Environmental Protection Agency

KIRK MINCKLER
Attorney
Office of General Counsel
United States Department of Agriculture

SONIA OVERHOLSER
Attorney Advisor
United States Department of the Interior

                    THE SHONSHONE-PAIUTE TRIBES OF THE

1

DUCK VALLEY RESERVATION

2

3    DATE:  12/12/12                    /s/        Lloyd B. Miller

LLOYD B. MILLER

4                                        Sonosky, Chambers, Sachse, Endreson & Perry, LLP

900 West Fifth Avenue

5                                        Suite 700

Anchorage, Alaska  99501-2029

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Unopposed Request for Entry of Consent Decree

CERTIFICATE OF SERVICE

I, Gayle Simmons, hereby certify and declare:

1. I am over the age of 18 years and am not a party to this case.

2. My business address is 601 D Street, Washington, DC, 20004

3. I am familiar with the U.S. Department of Justice's mail collection and processing practices, know that mail is collected and deposited with the United States Postal Service on the same day it is deposited in interoffice mail, and know that postage thereon is fully prepaid.

4. Following this practice, on December 12, 2012, I served a true copy of the foregoing, attached document(s) entitled:

UNOPPOSED REQUEST FOR ENTRY OF CONSENT DECREE

MEMORANDUM IN SUPPORT OF UNOPPOSED REQUEST FOR ENTRY OF CONSENT DECREE ,( including Exhibits A-B)

PROPOSED ORDER TO ENTER CONSENT DECREE

via an addressed sealed envelope with postage fully prepaid, and deposited in regularly maintained office mail to the following parties (who do not yet appear on the Court's ECF system for this matter):

Jen Unekis
707 W. 4th St.
Lawrence , KS 66044

Betsy Temkin
Temkin Wielga & Hardt LLP
1900 Wazee Street, Ste 303
Denver, CO 80202

Carolyn Tanner
State of Nevada - Office of the Attorney General
5420 Kietzke Lane, Suite 202
Reno, NV 89511

Nhu Nguyen
Nevada Dept. of Wildlife
100 N. Carson Street
Carson City, NV 89706

Lloyd Miller
Sonosky, Chambers, Sachse, Miller & Munson, LLP
900 West Fifth Avenue, Suite 700
Anchorage, AK 99501

Joshua Wirtschafter
U.S. Environmental Protection Agency
Office of Regional Counsel
75 Hawthorne Street, ORC-3
San Francisco, CA 94105

Kirk Minckler
U.S. Dept. of Agriculture
Office of General Counsel
740 Simms Street, Room 309
Golden, CO 80401-4720

Sonia Overholser
U.S. Dept. of Interior - Field Solicitor
401 W. Washington, SPC 44
Phoenix, AZ 85003

1

2

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2012, at Washington, DC

3

4

GAYLE   SIMMONS

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Unopposed Request for Entry of Consent Decree

CATHERINE CORTEZ MASTO
Attorney General

CAROLYN E. TANNER (Bar No. 5520)
NHU Q. NGUYEN (Bar No. 7844)
 Senior Deputy Attorneys General
5420 Kietzke Lane, Suite 202
Reno, NV  89511
Telephone: (775) 688-1818
Facsimile: (775) 688-1822
 *Attorneys for State of Nevada*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF NEVADA THROUGH ITS DEPARTMENT OF NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL PROTECTION, A and THE SHOSHONE-PAIUTE TRIBES OF THE DUCK VALLEY RESERVATION,<br><br>            Plaintiffs,<br><br>        v.<br><br>ATLANTIC RICHFIELD COMPANY, THE CLEVELAND-CLIFFS IRON COMPANY, E.I. DU PONT DE NEMOURS AND COMPANY, TECK AMERICAN INCORPORATED, and MOUNTAIN CITY REMEDIATION, LLC,<br><br>            Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civ. Action No. 3:12-cv-00524-RCJ-WGC

**MEMORANDUM IN SUPPORT OF UNOPPOSED REQUEST FOR ENTRY OF CONSENT DECREE**

Memorandum in Support of Unopposed Request for Entry of Consent Decree

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

ELISE S. FELDMAN
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
Telephone:     (415) 744-6470
Facsimile:     (415) 744-6476
E-mail:  Elise.Feldman@usdoj.gov

DANIEL G. BOGDEN
United States Attorney
District of Nevada
HOLLY VANCE
Assistant United States Attorney
100 West Liberty
Suite 600
Reno, NV 89501
Telephone: (775) 784-5438
Facsimile: (775)784-5181
E-mail:  Holly.Vance@usdoj.gov
*Attorneys for Plaintiff United States of America*

LLOYD B. MILLER (AK Bar No.7906040)
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
900 West Fifth Avenue
Suite 700
Anchorage, AK 99501-2029
Telephone: (907) 258-6377
Facsimile: (907) 272-8332
Email: Lloyd@sonosky.net
*Attorney for the Shoshone-Paiute Tribes of the Duck Valley Reservation*

## I.      **INTRODUCTION**

On September 27, 2012, The State of Nevada on behalf of the Nevada Department of

Conservation and Natural Resources, Division of Environmental Protection ("NDEP") and the

Department of Wildlife ("NDOW"); the United States of America, on behalf of the United States

Environmental Protection Agency ("EPA"), the Department of the Interior's Bureau of Indian

Page 2

Memorandum in Support of Unopposed Request for Entry of Consent Decree

Affairs ("BIA") and the United States Fish and Wildlife Service ("FWS"), the Department of

Agriculture's United States Forest Service ("USFS"); and the Shoshone-Paiute Tribes of the

Duck Valley Reservation ("Tribes") (collectively, "Plaintiffs"), filed a complaint asserting claims

under Sections 106(a) and 107(a)(1) and (2) of the Comprehensive Environmental Response,

Compensation, & Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9606(a) and 9607(a)(1) and

(2), and Nevada Water Pollution Control Law NRS § 445A.300 to 445A.730 against Settling

Defendants Atlantic Richfield Company, Cliffs Natural Resources f/k/a Cleveland-Cliffs Iron

Company, E.I. du Pont de Nemours and Company, Teck American Incorporated f/k/a Teck

Cominco American Inc., f/k/a Cominco American Inc., and Mountain City Remediation LLC,

(collectively, "Settling Defendants") and contemporaneously filed a Notice of Lodging attaching

a Consent Decree, ("Consent Decree"). The Consent Decree was the product of years of

extensive negotiations and resolves all of the claims asserted in the Complaint. Declaration of

David Seter, attached hereto as Attachment A ("Seter Decl."), ¶ 4. In accordance with 28 C.F.R.

§ 50.7, notice of the settlement was published in the Federal Register for a period of 30 days. See

Federal Register at Volume 77, Number 193 (October 4, 2012) at pages 60723 – 60724.

Declaration of Elise S. Feldman attached hereto as Attachment B ("Feldman Decl.") ¶ 3. As of

the end of the public comment period, November 5, 2012, the United States had received only

one comment from the public pertaining to the settlement. Feldman Decl. ¶ 4. For the reasons

set forth below, Plaintiffs request that this Court approve and enter the Consent Decree as an

Order of the Court at this time.

## II.    DESCRIPTION OF SETTLEMENT

The Rio Tinto Mine Site ("Site") is an abandoned copper mine located approximately 2.5

miles south of Mountain City, in northern Elko County, Nevada. Mountain City Copper

Company conducted mining operations at the Site from 1932-1947. As asserted in the

Complaint, the Plaintiffs have incurred, and will continue to incur response costs in addressing

contamination of the Owyhee River and Mill Creek, and natural resources have been affected by

the contamination.

As asserted in the Complaint, each of the Settling Defendants are either current owners or

owner/operators of the mine at the time releases occurred and are therefore liable under Section

107(a) of CERCLA, 42 U.S.C. 9607(a) for the past and future response costs and for costs of

assessing damages to natural resources. The Consent Decree resolves the claims and requires the

Settling Defendants to do the following: (1) implement the remedy selected for the Site which

includes, among other things, removal of mine tailings from the Owyhee River, achieving certain

water quality standards, and providing fish passage and stream bank restoration, ("Remedy"), at

an estimated cost of over $25 million; (2) implement additional work if monitoring after Remedy

Construction identifies elevated levels of Site contaminants, and if NDEP or EPA requires such

additional work; (3) provide performance guarantees; (4) pay EPA $1,234,067 for past response

costs; (5) pay NDEP and EPA certain future oversight costs; (6) pay federal natural resource

trustees, United States Department of Interior and USFS, damage assessment costs of $709,527;

(7) pay $150,000 to the Tribes for their past and future costs; and (8) undertake other

commitments such as providing access, institutional controls, insurance, stipulated penalties in

the event of non-compliance and retention of records. *See* Sections VI (Performance of Work by

Settling Defendants), XVI (Payments for Response Costs), XVII (Payments to Natural Resource

Trustees), IX (Access and Institutional Controls), XXI (Stipulated Penalties), XXVI (Retention of

Records) and XIII (Performance Guarantee) of the Consent Decree.

## III.   ANALYSIS

### A.   General Principles

"The initial decision to approve or reject a settlement proposal is committed to the sound

1  discretion of the trial judge." *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984), quoting

2  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); accord; *United*

3  *States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir. 1997); *United States. v. Jones & Laughlin*

4  *Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986).  Courts typically accord substantial deference to

5  settlement agreements because "[t]he law generally favors and encourages settlements." *Metro.*

6  *Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980).  *United*

7  *States v. Akzo Coatings of Am. Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (there is a "presumption

8  in favor of voluntary settlement").

9

10         Judicial deference to negotiated settlements is particularly appropriate where the

11  government has entered into a consent decree.  The Supreme Court has itself articulated the

12  significant deference owed to the judgment of the United States in settling a matter:

13
           [S]ound policy would strongly lead us to decline . . . to assess the wisdom of the
14         Government's judgment in negotiating and accepting the . . . consent decree, at
           least in the absence of any claim of bad faith or malfeasance on the part of the
15         Government in so acting.

16  *Sam Fox Publ'g Co. v. United States*, 366 U.S. 683, 689 (1961). 81 S.Ct. 1309, 1312-1313, 6

17  L.Ed.2d 604 (1961).

18
           As the Ninth Circuit has explained, "[the] policy of encouraging early settlements is
19
    strengthened when a government agency charged with protecting the public interest 'has pulled
20
    the laboring oar in constructing the proposed settlement'"; indeed, "a district court reviewing a
21
    proposed consent decree 'must refrain from second-guessing the Executive Branch.'" *United*
22
    *States. v. Montrose Chem. Corp.*, 50 F.3d 741, 746 (9th Cir. 1995), quoting *United States v.*
23
    *Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990).
24
           Judicial deference to a settlement negotiated by the government is "particularly strong
25
    where a consent decree has been negotiated by the Department of Justice on behalf of a federal
26

27

28

Memorandum in Support of Unopposed Request for Entry of Consent Decree

1   administrative agency like EPA which enjoys substantial expertise in the environmental field."

2   *Akzo Coatings*, 949 F.2d at 1436. See also *United States v. Chevron USA, Inc.*, 380 F.Supp. 2d

3   1104, 1111 (N.D. Cal 2005); *Int'l Fabricare Inst. v. United States EPA*, 972 F.2d 384, 389 (D.C.

4   Cir. 1992) ("The rationale for deference is particularly strong when the EPA is evaluating

5   scientific data within its technical expertise").  Courts have expressed a presumption in favor of

6   settlement where the governmental agencies charged with enforcing environmental statutes have

7   negotiated a consent decree. *Cannons*, 899 F.2d at 84; *Montrose Chem. Corp.*, 50 F.3d at 746-

8   47; *Kelley v. Thomas Solvent Co.*, 790 F.Supp. 731, 735 (W.D. Mich. 1991).  This limited

9   standard of review for governmental actions reflects the "strong public policy in favor of

10  settlements, particularly in very complex and technical regulatory contexts."  *United States. v.*

11  *Davis*, 261 F.3d 1, 27 (1st Cir. 2001) (internal quotation and citation omitted).

13  **B.   The Legal Standard to be Applied**

14      In light of the policy in favor of settlements and the deference given to settlements

15  negotiated by the government, a court should approve entry of a consent decree under CERCLA

16  when the decree is fair, reasonable, and in conformity with applicable laws. *United States  v.*

17  *Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).

18      A court is not required to make the same in-depth analysis of a proposed settlement that it

19  would be required to make when entering a judgment on the merits after trial.  *Citizens for a*

20  *Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983); *United States v. County of*

21  *Muskegon*, 33 F.Supp. 2d 614, 620 (W.D. Mich. 1998) ("Because a consent judgment represents

22  parties' determination to resolve a dispute without litigating the merits, the court's role is not to

23  resolve the underlying legal claims, but only to determine whether the settlement negotiated by

24  the parties is in fact a fair, reasonable and adequate resolution of the disputed claims").  The

25  relevant standard "is not whether the settlement is one which the court itself might have

Page 6

fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons*, 899 F.2d at 84; *United States. v. DiBiase*, 45 F.3d 541, 543 (1st Cir. 1995); *United States. v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1084 (1st Cir. 1994).

## IV.   ARGUMENT

The settlement is fair, reasonable, consistent with the goals of CERCLA, and is in the public interest.

### A.   The Consent Decree is Fair

In determining whether a settlement is fair, the Court considers both procedural fairness and substantive fairness. *Cannons*, 899 F.2d at 86; *Chevron*, 380 F.Supp. 2d at 1111. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons*, 899 F.2d at 86. The settlement is procedurally fair if it was negotiated in a fair manner. *Id.* at 84.

This settlement was procedurally fair. Each party to this Consent Decree was represented by experienced counsel and assisted by knowledgeable environmental consultants. Seter Decl. at ¶ 3. Given the complexity of the technical issues involved in this case,  the teams from each party worked together in negotiating resolution of difficult technical issues as well as resolving the legal issues this case presented. Seter Decl. at ¶  3. Negotiations have been on-going for many years and have included multiple in-person negotiation sessions among the various parties in Nevada, California, and Colorado, as well as years of telephone and email negotiations. Seter Decl. at ¶ 4. In light of these facts, this settlement is fair. See *Cannons*, 899 F.2d at 86.

### B.   The Consent Decree is Substantively Fair

As the product of "adversarial vigor," this settlement comes to the Court with an assurance of substantive fairness. *United States v. Montrose Chem. Corp.*, 793 F. Supp. 237, 240

Memorandum in Support of Unopposed Request for Entry of Consent Decree

(C.D. Cal. 1992). As the First Circuit stated in *Cannons* "[s]ubstantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." 899 F.2d at 87. See also *Davis* 261 F.3d at 23 ("A finding of procedural fairness may also be an acceptable proxy for substantive fairness, when other circumstantial indicia of fairness are present."); *United States v. Charles George*, 34 F.3d at 1087-89. In reviewing substantive fairness, the Court need only determine whether a proposed consent decree reflects a reasonable compromise of the litigation. *Rohm & Haas*, 721 F. Supp.666, 685 (D.N.J. 1989). Factors considered by courts reviewing CERCLA consent decrees for fairness include "'the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved.'" *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 517 (W.D. Mich. 1989) (citing *United States v. Hooker Chem. & Plastic Corp.*, 607 F. Supp. 1052, 1057 (W.D.N.Y.), *aff'd*, 776 F.2d 410 (2d Cir. 1985); *cf. Hiram Walker*, 768 F.2d at 899.

The Consent Decree is also substantively fair. It resolves the liability of the Settling Defendants and gives them time to accomplish the Remedy, but requires from them a significant cleanup effort that will extend over a period of many years and cost millions of dollars. Consent Decree at Section VI (Performance of the Work by Settling Defendants). Moreover, it requires that the Settling Defendants provide funding for the Tribes and reimbursement of Nevada and the United States' response costs and past natural resource damage assessment costs. Consent Decree at Section V (General Provisions). Importantly, this settlement also takes into account litigation risks and the avoided costs of resolution short of litigation. Seter Decl. at ¶ 5. Accordingly, the Consent Decree is fair. See *United States v. Oregon*, 913 F.2d at 580.

### C.    The Consent Decree is Reasonable

A consent decree is reasonable if it is designed to recover costs and provide a practical

Memorandum in Support of Unopposed Request for Entry of Consent Decree

and appropriate redress that the defendant is in a position to implement, and the United States can efficiently enforce. See *Cannons*, 899 F.2d at 89-90. As noted above, this Consent Decree achieves these goals through work and payment requirements that the Consent Decree places on the Settling Defendants. See above at Section II of this Memorandum listing obligations of the Settling Defendants.

### D. The Consent Decree is in the Public Interest and Consistent with CERCLA

A primary role of the Court in reviewing an environmental settlement is to determine "whether the decree comports with the goals of Congress." *Sierra Club v. Coca-Cola Corp.*, 673 F.Supp. 1555, 1556 (M.D. Fla. 1987). The Court's role is not to determine whether the settlement is one that will best serve society, but rather to confirm that the settlement is within the reaches of the public interest. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1460 (D.C. Cir. 1995), quoting *United States v. W. Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990) (emphasis in original) (additional citations omitted).

The proposed Consent Decree is consistent with the goals of CERCLA. CERCLA was enacted to combat the environmental and health risks posed by industrial pollution by creating a mechanism for cleaning up sites contaminated with hazardous substances. *United States v. Bestfoods*, 524 U.S. 51, 55, 118 S.Ct. 1876, 1881, 141 L.Ed.2d 43 (1998); *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 814, 114 S.Ct. 1960, 1964, 128 L.Ed.2d 797 (1994). The Consent Decree implements CERCLA's statutory goals by requiring the Settling Defendants to undertake the Remedy which will permanently protect the Owyhee River from contamination from tailings on Site, and in addition, to undertake further investigation to determine whether a second source for the contamination exists in underground mine workings. Consent Decree at Section VI (Performance of the Work by Settling Defendants). Thus, consistent with the goals of CERCLA, the Consent Decree will result in preventing releases of hazardous substances into portions of the

Memorandum in Support of Unopposed Request for Entry of Consent Decree

Owyhee River and Mill Creek.  Moreover, the settlement provides for payment of certain future costs of EPA and NDEP, as well as $1,234,067.74 of past EPA response costs and $709,527.81 of past natural resource damage assessment costs of the United States Department of the Interior and USFS; and payment of $150,000 to the Tribes to fund their continued participation at the Site.  Consent Decree at Section XVI (Payments of Response Costs and Section XVII (Payments to Natural Resource Trustees)  Accordingly, this settlement meets the goals of CERCLA of effecting a cleanup and  recovering response costs.  The Consent Decree is also in the public's best interest because avoiding litigation spares taxpayer resources as well as the resources of the other parties and the Court.

### E.    The Comment Received Does Not Impact the Fairness of the Settlement

The United States received one comment from the public pertaining to this settlement: an email sent by Jennifer Unekis.  Attachment A to Feldman Decl., ("Comment").  Ms. Unekis is the daughter of Doris Widerberg, the owner of the Rio Tinto Mine, ("Property").  Feldman Decl. ¶ 4.  Pursuant to the terms of the Consent Decree, the State and the United States reserved the right to withdraw or withhold its consent for the entry of the Consent Decree if any comments received "disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate."  The Comment does not disclose any relevant facts or considerations indicating that the Consent Decree is in any way inappropriate, improper or inadequate.

The Comment provides a history of Ms. Widerberg's ownership of the Property and references discussions by the RTWG with Ms. Widerberg for the purchase of the Property.  See Comment, generally. The Comment describes frustration regarding ownership of contaminated property, and references a rejected offer made by the  RTWG to Ms. Widerberg to purchase the Property.  Neither subject is relevant to the analysis of whether this Consent Decree is fair and achieves the goals of the statute.  The offer by the RTWG would have resulted in a separate real

estate transaction with Ms. Widerberg that would not involve the Plaintiffs to this action.

Accordingly, the concerns raised by the Comment do not impact the conclusion that this Consent

Decree is fair and in the public interest.

## V.   CONCLUSION

The Consent Decree is fair, reasonable, and in the public interest, and the Court should

grant the Plaintiffs' Unopposed Request for Entry of the Consent Decree.

Respectfully submitted,


FOR THE STATE OF NEVADA

CATHERINE CORTEZ MASTO
Attorney General


Date: 12/12/12                         /s/    Carolyn E. Tanner
                                       CAROLYN E. TANNER (Bar No. 5520)
                                       Senior Deputy Attorney General


Date: 12/12/12                         /s/    Nhu Q Nguyen
                                       NHU Q. NGUYEN (Bar No. 7844)
                                       Senior Deputy Attorney General
                                       5420 Kietzke Lane, Suite 202
                                       Reno, Nevada 89511
                                       Telephone: (775) 688-1818
                                       Facsimile: (775) 688-1822


FOR THE UNITED STATES OF AMERICA

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


Date: 12/12/12                         /s/   Elise S. Feldman
                                       ELISE S. FELDMAN
                                       Trial Attorney

Page 11

Exhibit   A

Exhibit   A

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF NEVADA THROUGH ITS DEPARTMENT OF NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL PROTECTION, A and THE SHOSHONE-PAIUTE TRIBES OF THE DUCK VALLEY RESERVATION,<br><br>                Plaintiffs,<br><br>       v.<br><br>ATLANTIC RICHFIELD COMPANY, THE CLEVELAND-CLIFFS IRON COMPANY, E.I. DU PONT DE NEMOURS AND COMPANY, TECK AMERICAN INCORPORATED, and MOUNTAIN CITY REMEDIATION, LLC,<br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Civil Action No.<br><br>**DECLARATION OF DAVID SETER IN SUPPORT OF UNOPPOSED REQUEST FOR ENTRY OF CONSENT DECREE** |

I, David Seter, pursuant to 28 U.S.C. § 1746, hereby swear and affirm under penalty of perjury that the following is true and correct, either of my own personal knowledge or based on my review of records of the United States Environmental Protection Agency ("EPA") related to the Rio Tinto Mine Site located in Elko County, Nevada ("Site"), and that I am competent to testify regarding these matters.

    1.    I am employed by the United States Environmental Protection Agency.  I currently hold the position of Remedial Project Manager in the Superfund Division of Region 9, in San Francisco, California.  I have worked at EPA since May, 1987 and I have been employed as a Remedial Project Manager since August, 1993.  I am the currently EPA's Remedial Project Manager assigned to the Site.

    2.    The Site is an abandoned copper mine located approximately 2.5 miles south of

Declaration of David Seter In Support of Unopposed Request for Entry of Consent Decree

Mountain City, in northern Elko County, Nevada.  Mountain City Copper Company conducted mining operations from 1932-1947.

     3.      Each party in this case was represented by experienced counsel and assisted by knowledgeable environmental consultants.  Given the complexity of the technical issues involved in this case, these teams worked together in negotiating resolution of difficult technical issues as well as resolving the legal issues this case presented.

     4. Negotiations have been on-going for many years and have included multiple in-person negotiation sessions among the various parties in Nevada, California, and Colorado, as well as years of telephone and email negotiations.

     5. This settlement also takes into account litigation risks and the avoided costs of resolution short of litigation.

     6. Implementation of the Remedy selected in the Record of Decision for this Site is estimated to cost $25 million.

Dated:   _11-20-12_____      By: _____

                                                   David Seter

Exhibit   B

Exhibit   B

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF NEVADA THROUGH ITS DEPARTMENT OF NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL PROTECTION, A and THE SHOSHONE-PAIUTE TRIBES OF THE DUCK VALLEY RESERVATION,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>ATLANTIC RICHFIELD COMPANY, THE CLEVELAND-CLIFFS IRON COMPANY, E.I. DU PONT DE NEMOURS AND COMPANY, TECK AMERICAN INCORPORATED, and MOUNTAIN CITY REMEDIATION, LLC,<br><br>　　　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )　Civ. Action No. 3:12-cv-00524-RCJ-WGC<br><br>**DECLARATION OF ELISE S. FELDMAN  IN SUPPORT OF UNOPPOSED REQUEST FOR ENTRY OF CONSENT DECREE** |

I, Elise S. Feldman, pursuant to 28 U.S.C. § 1746, hereby swear and affirm that the following is true and correct, related to the Rio Tinto Mine Site.

　　　1.　　I am a Trial Attorney at the United States Department of Justice, Environment and Natural Resources Division, Environmental Protection Section.  My office is located at 301 Howard Street, San Francisco, California.  I have been a Trial Attorney for the United States Department of Justice since April of 1999.  I am the United States' lead counsel for the above captioned litigation pertaining to the Rio Tinto Mine Site, located in Elko, Nevada.

　　　2.　　On September 27, 2012, the State of Nevada, the United States, and the Shoshone-Paiute Tribes of the Duck Valley Reservation ("Tribes"), (collectively, "Plaintiffs") lodged a Consent Decree setting forth the terms of the agreement between the State of Nevada, the United States, the Tribes, and Defendants Atlantic Richfield Company, Cliffs Natural Resources f/k/a

Declaration of Elise S. Feldman In Support of Unopposed Request for Entry of Consent Decree

Cleveland-Cliffs Iron Company, E.I. du Pont de Nemours and Company, Teck American

Incorporated f/k/a Teck Cominco American Inc., f/k/a Cominco American Inc., and Mountain

City Remediation LLC, (collectively, "Settling Defendants") setting forth the agreement between

the Plaintiffs and the Settling Defendants.

     3.    The United States published notice of the lodging of this Consent Decree in the

Federal Register at Volume 77, Number 193 (October 4, 2012) at  pages 60723 - 60724.

     4.    The United States received one comment on the Consent Decree, an email from

Jennifer Unekis dated November 5, 2012, 5:57 pm., a true and accurate copy is attached hereto as

Attachment A.

Dated: _12 - 12 - 12_____      By: _Elise S. Feldman_

                                       Elise S. Feldman

Declaration of Elise S. Feldman In Support of Unopposed Request for Entry of Consent Decree

ATTACHMENT A

ATTACHMENT A

**From:** Jennifer Unekis [mailto:j_unekis@hotmail.com]
**Sent:** Monday, November 05, 2012 5:57 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** Rio Tinto remediation Mountain City, Nevada

To whom it may concern in regards to the remediation project at the Rio Tinto mine site outside of Mountain City Nevada.

My mother Doris Widerburg purchased the Rio Tinto mine located near Mountain City, NV 30 years ago with her brother Richard who had been missing from the family for many years. He had been living on the property ( I believe as a caretaker) and he felt it would be a good investment. Although I feel he prayed on her desire to keep him in contact with the family too.

One of the questions she asked the attorney involved in the sale at the time was if the property had any environmental concerns and was told it did not. Whether misguided or not we will never know.

Shortly after purchase of the property she found out that it did have environmental concerns and was told that she could not do mining or use the property for any other uses due to its toxicity. When I was was thirteen to about sixteen my family would stay at the mine from time to time and she would work with her brother on possible uses for the property and take ore samples around the property. No work was done because we didn't want to contribute to the environmental concerns.  During this time we would also work in the Diner in Mountain City.

About 15 years ago after many years of discussion among the EPA and other agencies she agreed to contractual agreement with the prior mining companies (The Working Goup) that owned the Rio Tinto and were responsible for it's contamination. She agreed to allow the remediation to take place and was also released from any contributing factors to the properties contamination. Shortly after she also agreed to have some B.L.M. Forestry land signed over to her. The B.L.M. did a full title search for transfer of the property.

At the time she agreed to the contract for remediation she had been told that this project would take about two years to complete and she would be able to have use of the land again. This did not happen. After many years of not being cleared to use the property and the failing of the remediation project another plan had been considered by the mining companies. .

Currently the "Working Group" is in the process of continuing forward with the remediation. After almost 30 years of having land that we purchased on hold due to contamination the Working Group made us an offer of purchase after many months of stringing us along of 50,000 in 2011. 50,000 dollars for 250 acres of land that has been tied up for 30 years and is involved in a 25 million dollar remediation project seemed like a slap in the face. It probably took more money to pay the attorney fees to come up with the offer. They also offered a 1 1/2 % allowance of gross of any future money that may be made from minerals. If they so strongly feel there is not value in the property why would they have included that. Especially since we had asked to not have it be a part of the agreement.

Doris is now 79 years old. She was 49 at the time she purchased the property. Oddly the same age I am today. She has very little financial support. She is attached to this property in part due to her attachment to the memory of her brother who died on the property and the hope that she would be able to some day at least be able to reclaim her investment in the property. She originally purchased the property using a divorce settlement with my father whom we suffered from years of abuse.  And although it was not a lot of money, it at the time could have helped she and my two siblings when we didn't have a very stable life and virtually no income. It in many ways was her dream for a new start.

Thirty years later this property has been a drain on her emotionally and financially as well as being a drain on our entire family.

She was also told that the water rights that the property had would transfer to her at the time of purchase. Soon after she hired someone to trace the rights and had received copies of the claims from the Nevada Dept. of Water Resources that she was later told were no good.  One of the possible uses for the property that the "Working Group" along with consent of the EPA had suggested at one time was a fresh water fish farm. Which would of course mean the use of water. Or if the remediation is successful possible grazing use.  Losing the water rights also of course keeps any more even small scale mining out of the question for the property. Whether that would be feasible or not.

I personally have an emotional dis-attachment to this property. It has caused our family many years of battles with the previous mining companies, lawyers, attempting to be helpful to the needs of the EPA and even enduring people who stole an entire building for scrap from the property. My mother has lived far below the poverty level for many years. With her children helping as we can. And the dollar amount that has been thrown around by lawyers and the Mining Group for the remediation is unreal. She has been completely kept out of the loop with plans for the project and treated as though she is not the one who has had her land tied up for any use for 30 years.

I greatly appreciate the time you have taken to read this letter. I am not sure how this letter could help my mothers situation, but in looking into the status of
the remediation project today I found this notice (attached). It had this address to respond to the notice. The drive to write this letter was due to the quotations in various media posts about what a great job the Working Group are doing toward their goal of completing this remediation. They have worked closely with the native people in the area and the EPA. We on the other had have been strung along and told lies for years. Lies that they wanted to work with us, that they would make us a "fair" offer on the land and lies that after the first failed remediation that we would have use of the property.
Another concern is weather or not there is value in the tailings that they are planning on moving. At one time my mother was told that they planned on processing them to help pay for the remediation. We still have not idea if that is or is not happening.

My mother may have been used to try to shield the mining companies from having to pay for the pollution and toxic waste they created on the property. I am still not sure how they could have not disclosed the hazards the property had at the time of sale. Yet some how we praise the Working Group for their good deeds in caring for our environment.  Meanwhile my mother has paid taxes for years she has not use of, not to mention not being able to receive government financial support due to it being considered "income property".

I am sorry if this letter is a little confusing. I had about an hour to come up with something to send before the deadline had passed.

Thank you,

Jen Unekis
707 W. 4th St.
Lawrence, KS 66044
785-766-1469

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF NEVADA THROUGH ITS DEPARTMENT OF NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL PROTECTION, A and THE SHOSHONE-PAIUTE TRIBES OF THE DUCK VALLEY RESERVATION,<br><br>                  Plaintiffs,<br><br>        v.<br><br>ATLANTIC RICHFIELD COMPANY, THE CLEVELAND-CLIFFS IRON COMPANY, E.I. DU PONT DE NEMOURS AND COMPANY, TECK AMERICAN INCORPORATED, and MOUNTAIN CITY REMEDIATION, LLC,<br><br>                  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civ. Action No. 3:12-cv-00524-RCJ-WGC<br><br>       ORDER TO ENTER CONSENT DECREE |

For the reasons set forth in the Plaintiffs' Unopposed Request for Entry of Consent Decree and Memorandum in Support thereof and for good cause shown, the Consent Decree is hereby ENTERED and shall constitute a final judgment of the Court as to the above captioned matter pursuant to Fed. R. Civ. P. 54 and 58.

IT IS SO ORDERED:

May 20, 2013
_____
Date

_____

HONORABLE ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

Page 1

Order to Enter Consent Decree